**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **WAYNE A. MORGAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | )   **Case No.    CIV-10-465-F** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

# FINDINGS & RECOMMENDATION
## OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423, and his application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED for further administrative proceedings.**

### PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on August 8, 2005 alleging a disability since April 10, 2005 (TR. 11). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 11). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on July 9, 2008 (TR. 19-34). The Plaintiff appeared in person and with his attorney and offered his testimony in support of the applications (TR. 22-30). A vocational expert (VE) testified at the request of the ALJ (TR. 30-34). The ALJ issued his decision on September 30, 2008 finding that Plaintiff was not entitled to DIB or SSI (TR. 11-18). The

Appeals Council denied the Plaintiff's request for review on April 20, 2010, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 1-3).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted).*

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability application the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 10, 2005 through his date last insured of December 31, 2010, so the process continued (TR. 13). At step two, the ALJ concluded that Plaintiff had the following severe impairments: Post traumatic stress disorder and depression (TR. 13). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (PRW) (TR. 17).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the RFC to perform light work "except that he only has the ability to remember and understand very short and simple instructions and carry out simple routine tasks and requires work in relative isolation with limited contact with peers and supervisors" (TR. 16). The ALJ used Medical Vocational Rule 202.21 as a framework for decision making and considered the testimony of the VE in determining that the jobs of "lens waxer", "lens inserter" and "varnisher" were jobs existing in significant numbers in the national economy which could be performed by Plaintiff (TR. 18). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 18).

## ISSUES PRESENTED

On appeal to this Court, Plaintiff alleges that the ALJ's decision is not supported by substantial evidence; and that the ALJ erred in finding Plaintiff had the RFC to perform a limited range of light work.

## MEDICAL EVIDENCE

In February 2006, Plaintiff underwent a consultative mental status examination performed by Gary A. France, Ph.D. (clinical psychologist) who found that Plaintiff was fully oriented and had low average intelligence; that he had a good fund of information and long term memory; and that he had fair abstraction ability and could not do proverbs (TR. 180). Dr. France also found that Plaintiff had poor judgment on mental status questions; that he had fair short term memory for serial sevens and good concentration in other areas (TR. 180). Dr. France also reported that overt

psychotic thought processes were absent during the examination, but that some anhedonia and depression were present (TR. 180). Dr. France assessed Plaintiff as having a GAF of 50. [1]

In March 2006, Plaintiff was examined by Vicky Mills, D.O., who found that Plaintiff was alert and oriented; that his speech was slowed but was cohesive and coherent; and that his thought process was cohesive (TR. 205-206). Dr. Mills also reported that Plaintiff did not present with any perceptual abnormalities or hallucinations; that his mood was depressed and his intelligence average; and that his memory and judgment appeared to be intact (TR. 206).

In February 2007, Plaintiff was again examined by Dr. Mills who found Plaintiff's motor behavior was appropriate; that his speech, thought process, and thought content were intact; and that his mood was stable (TR. 308). Dr. Mills also observed that Plaintiff's short term and long term memory appeared intact; that his intelligence appeared average; and that his judgment and insight appeared intact (TR. 308).

Also in February 2007, Plaintiff underwent a consultative mental examination performed by Gail Poyner, Ph.D. (licensed psychologist) who concluded that "it does not appear that he has a thought disorder, a serious affective or anxiety disorder, and/or any significant mental health problems" (TR. 315). Dr. Poyner also reported that although Plaintiff cited PTSD in his previous exam, he made no mention of PTSD in his interview with Dr. Poyner (TR. 315). Dr. Poyner's provisional diagnoses included "R/O Depression, Mild" and a GAF of 65.

---

[1] A GAF represents Axis V of the Multiaxial Assessment system.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994), p. 30. The GAF score is taken from the GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." Id. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 32. The GAF Scale defines the following ranges; (31-40) Some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood; (41-50) Serious symptoms OR serious impairment in one of the following: social, occupational, or school functioning; (51-60) Moderate symptoms OR any moderate difficulty in social, occupational, or school functioning; and (61-70) Mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

In March 2007, agency physician, Ron Smallwood, Ph.D., reviewed Plaintiff's medical records and concluded that Plaintiff was "markedly" limited in his ability to understand, remember, and carry out detailed instructions; and that he was "markedly" limited in his ability to interact appropriately with the general public (TR. 333-334). In his functional capacity assessment Dr. Smallwood found that Plaintiff could perform simple tasks with routine supervision (TR. 335). He also found that she could relate to peers and supervisors on a superficial work basis, but could not relate to the general public (TR. 335). Dr. Smallwood in his case analysis included the following statement as to Dr. Poyner's report: "Specific Question: Is the MSE of 2/27/07 creditable" (TR. 318).

Treatment records from the VA Medical Center in Oklahoma City show in February 2007 Plaintiff presented himself complaining of feeling sad and having sleep disturbances, low energy, poor concentration and being irritable (TR. 345). He also reported that he had been off his medications for almost a year (TR. 345). In December 2007 a mental status exam was performed in which the physician found that Plaintiff was alert and oriented; that he maintained good eye contact with appropriate voice and speech levels; and that his thought processes were logical and coherent and his recent and remote memory intact (TR. 339). The exam also revealed that Plaintiff had poor insight and fair judgment with a depressed and anxious mood (TR., 339). The VA physician assessed Plaintiff as having a history of PTSD and depression, and noted that his last appointment was ten months prior; and that Plaintiff there were multiple "no shows" for his appointments (TR. 340). During the relevant period, VA physicians who examined and treated Plaintiff gave him the following GAF scores: 35 in December 2007; 50 in February 2007; 50 in February 2006; 50 in September 2005; and 60 in June 2005 (TR. 340, 345, 250, 268, 273).

## ANALYSIS

Plaintiff argues that the ALJ's decision is not based on substantial evidence; and that the ALJ erred in his determination of Plaintiff's RFC (See Plaintiff's Brief at pages 8-14). The ALJ

appears to have ignored, without explanation, the GAF findings of Plaintiff's treating physicians at the VA Medical Center and the GAF findings of the consulting physician, Dr. France. The ALJ's decision is conspicuously silent as to any GAF score from any source (TR. 13-15).

Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job, Plaintiff's treating physician at VA, Hashie Farique, M.D., diagnosed Plaintiff with major depressive disorder, "recurrent, severe, with psychosis and PTSD, chronic" in December 2007 when he assessed Plaintiff as having a GAF of 35 (TR. 340). A GAF score of 35 indicates a major impairment in several areas including Plaintiff's ability to hold a job. The ALJ did not discuss or even mention the GAF scores and did not provide sufficient reasoning to disregard the opinion of the treating source, Dr. Farique, as to Plaintiff's GAF of 35. *See Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

Although the ALJ did not specifically discuss the GAF scores in his decision, he did indicate that he had considered all of the evidence (TR. 13). *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Nonetheless, the ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *see also Clifton*, 79 F.3d at 1010 ("In addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). Because the ALJ's discussion of the mental impairment evidence does not mention the GAF scores, it is unclear whether the ALJ considered or rejected this evidence, favorable to Plaintiff.

The ALJ's errors in evaluating the medical evidence have tainted his RFC determination, thus, errors asserted with regard to the RFC determination will not be discussed herein. Also, Plaintiff's assertion that the query of the agency physician, Dr. Smallwood, "Is the MSE of 2/27/07

[sic] creditable" does call into question the weight to be given Dr. Poyner's opinion and should be discussed on remand (See Plaintiff's Brief at pages 8-9) (TR. 318).

On remand, the ALJ should provide a thorough discussion of the GAF scores given Plaintiff by his VA Physicians and by Dr. France.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED AND REMANDED for further administrative proceedings**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **October 31, 2011**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 11th day of October 2011.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE